**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Ashland Electric Products, Inc.

    v.                                      Civil No. 04-cv-291-PB

Bombardier Transportation
Holdings) USA, Inc.

**O R D E R**

The Court has two motions before it for consideration in the above-captioned matter. Defendant moves for clarification of this Court's endorsed order on Defendant's motion for extension of time to answer (document no. 25). Plaintiff moves to compel discovery responses (document no. 33). Both motions drew objections from the non-moving party.

I.    Motion To Clarify

On September 8, 2005, the Court signed an endorsed order granting the Defendant's motion to extend time to answer the Plaintiff's amended complaint. The Court included the following sentence at the conclusion of the order: "Any request to add new counts must be addressed by separate motion." Defendant seeks clarification of the Court's order stating that it reads the final sentence to mean that "its answer, affirmative defenses,

and counterclaim were allowed by the Court's order, but that if Ashland wishes to add any counts to its first amended complaint, or if Bombardier wishes to add any counts to its counterclaim in the future, then a motion would be required." Df.'s Mot. to Clarify at 1, ¶ 2.

Defendant's motion to clarify is granted. The final sentence in the Court's September 8, 2005 endorsed order was not intended to mean that the Defendant had to file a separate motion in order to assert counterclaims in its answer to the Plaintiff's amended complaint. The parties must file a motion for leave, however, to file any further amendments to the pleadings.

II. Motion To Compel Discovery

   A.  Whether Defendant's Objections Are Waived

Defendant was served with Plaintiff's First Request for Production of Documents and Second Set of Interrogatories on or about July 21, 2005. Plaintiff argues that Defendant's responses, provided on or about September 8, 2005, were untimely because pursuant to Fed. R. Civ. P. 33(b)(3) and 34(b), Defendant had until August 23, 2005 to provide its responses and objections. Thus, Plaintiff argues, since Defendant did not meet its deadline, the objections included with its discovery

responses should be deemed waived.

Events preceding Defendant's discovery responses are material to the resolution of this issue.  The Plaintiff's discovery requests sought, among other things, information and documents pertaining to dealings between the parties that were not addressed in the Plaintiff's original complaint.  In a letter dated August 5, 2005, the Defendant asked whether the Plaintiff wanted the Defendant to provide only a partial response to the pending discovery requests, since the Plaintiff's motion for leave to amend the complaint had not yet been granted, or whether Plaintiff preferred that the Defendant defer responding until after the court's ruling on the motion to amend.  Plaintiff did not respond immediately.

Plaintiff's motion for leave to amend the complaint was granted on August 8, 2005.  In a letter dated August 9, 2005, the Plaintiff asserted that the Court's ruling allowing the amended complaint rendered Defendant's inquiry "academic" and that Plaintiff expected Defendant's discovery responses to be "timely and complete."  Without further conferring with Plaintiff, Defendant recalculated its deadline to respond to Plaintiff's discovery requests to 30 days from the date that the amended

complaint was filed. Defendant served its discovery responses within 30 days of the filing of the amended complaint.

A trial court has discretion in handling pretrial matters, including discovery. See Cummings v. Standard Register Co., 265 F.3d 56, 68 (1st Cir. 2001). The Court accepts Defendant's assertion that its August 5, 2005 inquiry was made in good faith and as a matter of professional courtesy. Although the Plaintiff is correct that the Defendant's discovery responses were not served within the period provided in the rules, in the interests of justice the Court finds that upholding the traditions of comity in New Hampshire Practice is more important than a strict application of the federal rules in this instance. See Fed. R. Civ. P. 1 (the rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action"). The Court finds that the Defendant's discovery responses should be deemed timely. Therefore, the Court denies the Plaintiff's request for a finding that Defendant has waived its objections to the discovery requests.

B.  Plaintiff's Definition of Terms In Discovery Requests

The Plaintiff argues that it has no way of knowing whether the Defendant's discovery responses are complete because the

Defendant stated generally that it "rejected" the definitions that Plaintiff incorporated into its discovery requests. Plaintiff seeks an order compelling the Defendant serve a supplemental response applying the Plaintiff's definitions.

Federal courts have permitted a propounding party to incorporate instructions and definitions in discovery requests, and have required the responding party to apply those instructions and definitions, to the extent that they are reasonable. See Orgulf Transp. Co. v. Magnolia Marine Transp., 1998 WL 351845 at *1 (E.D. La. June 25, 1998) (overruling an objection to definitions used in discovery requests where the court found the definitions to be helpful and necessary in light of defendant's alleged failure to understand rudimentary terms frequently used in the Federal Rules of Civil Procedure); Nalco Chem. Co. v. Hydro Tech., Inc., 149 F.R.D. 686, 697 (E.D. Wis. 1993) (finding that certain terms used in plaintiff's interrogatories were overbroad and ordering the defendant to respond in accordance with narrowed terms); Diversified Prods. Corp. v. Sports Ctr. Co., 42 F.R.D. 3, 4 (D. Md. 1967) (finding that setting forth standard instructions and definitions before interrogatories can be helpful in avoiding tedious repetition,

but can make interrogatories unduly burdensome if they are unreasonable and finding that defendant's definitions so expanded the information requested that many interrogatories were unduly burdensome).  The Court agrees with the Defendant's argument that some of the definitions that Plaintiff used are unreasonable, for instance, defining the term "document" to include "communications of any type, including telephone conversations."  Defendant further objects to Plaintiff's definition of the term "identify" which Plaintiff instructs that when used in reference to a document includes identifying "all documents, whenever prepared, that relate or refer to the document that you are requested to identify."  Rather than compel the Defendant to serve new responses to Plaintiff's discovery requests applying the Plaintiff's definitions, the Court orders the Defendant to serve a supplemental response stating, with respect to each term the Plaintiff defined, how Defendant defined the terms when responding to the Plaintiff's requests.  If the Plaintiff contends that Defendant's responses were inadequate because of the definitions that Defendant used, the Plaintiff may file another motion to compel, describing the deficiencies in the Defendant's responses and requesting further supplementation.

    C.    <u>Whether Defendant Met Its Rule 34 Obligations</u>

Included within the Defendant's response to Plaintiff's First Request for Production of Documents Nos. 1 to 17 was an objection on the grounds that:

> Federal Rule 34 requires production of documents, not repeated re-examination, re-categorization and/or itemization of documents which have previously been produced. In addition, the request to separately identify documents previously produced is unduly burdensome and duplicative and invades the attorney/client and work product doctrines, and asks for attorneys' thoughts and mental impressions.

Df.'s Response to Pl.'s First Requests For Production of Documents. Defendant indicated that it was producing responsive documents that it had not previously produced.

Plaintiff argues that Defendant's objection is unfounded because Rule 34 requires that documents produced in response to a request for production be itemized. Plaintiff further argues that Defendant's production of documents pursuant to its obligations under Rule 26 does not relieve Defendant of its responsibility to organize and label documents in response to Plaintiff's discovery requests under Rule 34.

By its terms, Rule 34 provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to

7

correspond with the categories in the request." Fed. R. Civ. P. 34(b). The responding party has the election between the two options.

A party's obligations to respond to discovery requests are distinct from a party's mandatory disclosure requirements under Fed. R. Civ. P. 26(a). See Martinez v. U.S., 1998 WL 308021 at *2 (E.D. La. June 10, 1998) (finding that the defendant confused the mandatory disclosure requirements of Fed. R. Civ. P. 26(a)(3) with its separate and distinct obligations to respond to discovery); Brasic v. Heinemann's Inc. Bakeries, 1996 WL 495562 *2 (N.D. Ill. Aug. 28, 1996) (the Federal Rules of Civil Procedure make a distinction between disclosures that must be made without awaiting a discovery request, and discovery which need only be made in response to a discovery request). Indeed, the advisory committee notes to Rule 26(a) indicate that the disclosure required by Rule 26(a)(1)(B) should assist the opposing party in framing its document requests. See Fed. R. Civ. P. 26(a), Advisory Committee's Note (1993); see also 7 James Wm. Moore Et Al., Moore's Federal Practice § 34.02[2] (3d ed. 2004). That a responding party has previously produced documents that are responsive to a request for production as part of the

responding party's Rule 26 disclosures does not, by itself, satisfy the requirements of Rule 34(b).  See Allianz Ins. Co. v. Surface Specialities, Inc., 2005 WL 44534 at *3 (D. Kan. Jan. 7, 2005) (absent some indication that the requested documents were produced as they are kept in the usual course of business, a party is required to identify the particular documents or to organize and label them to correspond to each Rule 34 request).

Defendant does not assert either in its discovery responses, or in its objection, that the documents that it previously provided to Plaintiff were produced as they are kept in their usual course of business.  Therefore, the Court finds that the Defendant has not met its discovery obligations under Fed. R. Civ. P. 34(b) since Defendant did not identify the documents that correspond to the Plaintiff's requests in its discovery response.  The Court orders the Defendant to provide the Plaintiff a supplemental response identifying the particular documents that are responsive to each of Plaintiff's document requests by Bates number.

    D.    Challenges to Specific Discovery Responses

        1.    Interrogatory No. 2

Plaintiff's Interrogatory No. 2 asks Defendant to "Please

identify all employees, agents, representatives, or persons otherwise associated with Bombardier who possess any knowledge of or information concerning the facts and issues raised in this litigation.  In addition, please provide a brief summary of the knowledge and/or information possessed by each person so identified."  Defendant objected to this interrogatory as follows:

> Answer: Objection by counsel.  This question invades the province of the attorney/client relationship and asks for information that is not discoverable.  Bombardier should not have to guess what the question means, nor should Bombardier have to guess what facts and issues are raised in the litigation so as to determine who has knowledge.  The term "knowledge" is ill-defined.  Literally, the answer to this question could range from the receptionist, who takes phone calls, to every person in the billing department, and could certainly encompass attorneys for Bombardier, and staff.

Plaintiff argues that identity of fact witnesses is not protected by the attorney/client privilege and that the information sought is the same information that Defendant should have, but did not, provide in its initial disclosures under Fed. R. Civ. P. 26(a)(1)(A).

The Defendant has a legitimate objection to the breadth of Plaintiff's interrogatory.  An interrogatory that blankets the entire case is objectionable.  See Allianz Ins. Co., 2005 WL

44534 at *8.  Furthermore, a party should not be required to provide a narrative account of its case in response to an interrogatory.  Id.  The Court agrees with the Plaintiff, however, that the Defendant may not simply ignore its obligation to provide the disclosures required under Rule 26(a)(1)(A).  The Court orders the Defendant to provide the Plaintiff a supplemental response that identifies: the name and, if known, the address and telephone number of each individual likely to have discoverable information that Defendant may use to support its claims or defenses, and, unless solely for impeachment, the subjects of the information possessed by each person identified.

### 2.    Interrogatory Nos. 7-8

Plaintiff's Interrogatory No. 7 asks Defendant:

> Please describe, in detail and in chronological order, all communications that Bombardier had with Ultra Fine Assembly concerning the design, development, manufacture, and/or sale of tangential air blowers, or any component thereof, for the MBTA of BART.  In answering this Interrogatory, please identify the date on which said communication occurred and please identify the individuals who participated in the communication.

Defendant responded to this interrogatory as follows:

> Answer: Documentation previously provided to Ashland identified the parties, dates, and communications by Bombardier to Ultra Fine Assembly.  Richard Hock, Procurement Specialist, was the lead in communications

11

>    with Ultra Fine.  Joseph Restanio was the Principal
>    Engineer involved over the years of communications.

Similarly, Plaintiff's Interrogatory No. 8 asks Defendant:

>    Please describe, in detail and in chronological order,
>    all communications that Bombardier had with Motor
>    Assembly Corp. concerning the design, development,
>    manufacture, and/or sale of tangential air blowers, or
>    any component thereof, for the MBTA or BART.  In
>    answering this Interrogatory, please identify the date
>    on which said communication occurred and please
>    identify the individuals who participated in the
>    communication.

Defendant responded to this interrogatory as follows:

>    Answer: The dates and all Adtranz personnel, including
>    Richard Hock as the Procurement Specialist, are named
>    in the correspondence between the two companies and
>    shown on all documentation previously given to Ashland.

Plaintiff argues that Defendant's responses to Interrogatory Nos. 7 and 8 are not complete and must be supplemented because Defendant has not produced any invoices, purchase orders or other documentation, including part drawings that one reasonably would expect to exist under the facts of this case.  As the allegedly omitted materials are clearly discoverable, the Court orders the Defendant to provide a supplemental response confirming whether the additional documents identified by the Plaintiff exist and producing any such documents if they do exist.

       3.    <u>Interrogatory No. 12</u>

Plaintiff's Interrogatory No. 12 asks Defendant to "Please describe, in detail, all ways in which Bombardier claims that the tangential air blowers supplied by Ashland to Bombardier did not meet Bombardier's quality standards.  In answering this Interrogatory, please specifically identify each and every Bombardier quality standard that Bombardier claims Ashland did not meet."  Defendant responded to this interrogatory as follows:

> Quality Standards is not the correct term to use in this context.  Ashland-supplied equipment was sold to Bombardier as meeting the Bombardier Engineering requirements found on the TESE and engineering drawings given to Ashland during the bidding phase of the two projects, both BART as well as MBTA.  For instance, the TESE and drawings given to Ashland gave the parameters of how large a diameter the wheel had to be; they also gave the parameters of what the speed requirements and rotational set of the motors had to be in order to meet the customer's requirements for their needs.

Plaintiff argues that although Defendant states in response to Interrogatory No. 12 that the term "quality standards" is not the correct term to use, Defendant used precisely that term in its April 17, 1998 letter to Plaintiff.  Therefore, Plaintiff argues, Defendant must answer this interrogatory in light of the meaning that it ascribed to term "quality standard" in its April 17, 1998 letter.  Plaintiff further argues that Defendant's answer is non-responsive because although Defendant lists certain "parameters"

13

it does not state whether or not Plaintiff met those parameters.

The Court agrees with Plaintiff's argument that Defendant's answer to Interrogatory No. 12 is non-responsive.  The Defendant is ordered to serve a supplemental response that specifies the failings in the Plaintiff's tangential air blowers supplied to Defendant by reference either to Defendant's specific engineering requirements and parameters or by reference to Defendant's specifically identified "quality standards."

        4.   <u>Interrogatory No. 15</u>

Plaintiff's Interrogatory No. 15 asks Defendant: "Does Bombardier claim that it sustained any damages as a result of any actions taken by Ashland?  If Bombardier answers this Interrogatory in the affirmative, please provide a detailed description and a detailed calculation of all damages claimed."  Defendant responded to this interrogatory as follows:

> Yes.  Ashland's failure to work with Bombardier to resolve issues has caused many problems with our customers.  Ashland purchased and paid for all 100 sets of blowers on the MBTA contract, and those blowers did not work.  Also, Bombardier was required to retrofit the defective blowers from Ashland, purchase and/or manufacture parts to retrofit the defective blowers at Bombardier's expense, and pay [for the] labor to perform the retrofit of the defective Ashland blowers.  Because Ashland's provision of non-performing blowers caused the [MBTA] cars not to function, Bombardier incurred costs to mitigate the damages claimed by MBTA

14

>  when its cars failed. Bombardier estimates that its
>  damages resulting from Ashland's failure to provide
>  performing blowers total approximately $1.4 million.

Plaintiff argues that Defendant's response to Interrogatory No. 15 is incomplete because Defendant does not provide a detailed calculation, or any calculation, for how it arrived at $1.4 million. The Court agrees. The Defendant is ordered to serve a supplemental response that provides a detailed computation of the damages it claims it suffered from Plaintiff's alleged failure to perform as required by Fed. R. Civ. P. 26(a)(1)(C).

### 5.   Request For Production No. 1

Plaintiff's Request For Production of Document No. 1 asks Defendant:

> Please produce all documents that concern the
> tangential air blowers that Bombardier supplied to the
> Massachusetts Bay Transit Authority ("MBTA") for use on
> the MBTA mass transit railway cars. If Bombardier has
> previously produced documents that are responsive to
> this request, please identify all such documents by
> bates stamp number.

Plaintiff argues that Defendant's response to this request was incomplete because Defendant made it clear that it intentionally withheld all MBTA documents from its initial disclosures and because the documents that the Defendant produced in response to Request No. 1 did not include the following types of documents:

correspondence between Bombardier and Ashland relating to the MBTA project; quotes or purchase orders relating to the MBTA project; communications with other suppliers relating to the MBTA project; any documents dated prior to 1997.  The Court orders Defendant to confirm in a supplemental response whether any additional responsive documents exist in the categories that Plaintiff has identified and to produce any such documents.

III. Request for Costs and Attorneys' Fees

Plaintiff requests that the Court award Plaintiff its costs and attorneys' fees incurred in the preparation of its motion to compel.  As the Court finds that some of Defendant's objections were justified, and that Plaintiff has not demonstrated that the Defendant's responses were in bad faith, the Court finds that an award to Plaintiff of its costs and attorney's fees is not warranted under the circumstances.

IV. Conclusion

For the reasons set forth above, Defendant's Motion to Clarify (document no. 25) is granted.  Plaintiff's Motion to Compel Discovery Responses (document no. 33) is granted in part and denied in part.  The Court denies Plaintiff's request for a finding that Defendant has waived its objections to Plaintiff's

discovery requests, and denies its request for an award of its costs and attorneys' fees in bringing the motion to compel.

The Court orders the Defendant to provide the Plaintiff the following supplemental responses: (1) a response identifying Defendant's definitions of terms that it substituted for Plaintiff's defined terms in responding to the Plaintiff's interrogatories and document requests; (2) answers to Plaintiff's Second Set of Interrogatories Nos. 2, 7, 8, 12 and 15 in accordance with the Court's discussion herein; (3) a response to Plaintiff's First Request for Production of Documents specifying by Bates number the documents that are responsive to each of Plaintiff's Requests for Production; and (4) a response to Plaintiff's Request for Production No. 1 confirming whether additional documents exist in accordance with the Court's discussion herein.  Defendant shall serve all supplemental responses required by this order within 20 (twenty) days from the date of this order.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: October 21, 2005

```
cc:   Steven E. Grill, Esq.
      Donald L. Smith, Esq.
      Robert A. Stein, Esq.
      George T. Campbell, III, Esq.
```